RASMUS JOHNSON, APPELLANT, V. JAMES G. WEBER ET AL., APPELLEES.

FILED DECEMBER 2, 1903.    No. 13,087.

1. **Contract: VALIDITY.** Merely indorsing by the notary on the back of a contract by husband and wife for the sale of the wife's real estate, of an extension of time for making the first payment, which

extension was not authorized by the wife, does not destroy the contract as really made, nor warrant the wife in repudiating it.

2. ———: PERFORMANCE. A payment which is to bind a bargain, and to be deposited with a contract in a bank, until a conveyance is made upon payment in full by a certain date, is in time if it gets into the bank before the contract is presented there, and both are left there together by the parties, though the payment is actually made three days after the time named in the agreement.

3. Evidence: WAIVER. Evidence held not to show any parol waiver or release of the contract by vendee.

4. Sale of Homestead: DURESS: SPECIFIC PERFORMANCE. The fact that the signature and acknowledgment of a wife to a contract of sale of a homestead was made under threat of her husband to "leave" her if she did not execute it, is not ground for refusing specific performance of the contract, where the vendee is entirely innocent of any participation in or knowledge of the threat.

APPEAL from the district court for Knox county: JAMES F. BOYD, JUDGE. *Reversed with instructions.*

*Frank Dolezal,* for appellant.

*William A. Meserve* and *W. L. Henderson, contra.*

HASTINGS, C.

This is an action brought to obtain specific performance of a contract for the sale of a farm. The defendants, James G. and Electa Weber, on September 7, 1901, entered into a written contract, agreeing to convey to the plaintiff the northeast quarter of section 30, town 29, range 5 east, for the sum of $6,400, $1,000 to be paid in cash, and deposited, together with the contract, in the bank of Creighton, and the remainder, $5,400, "by" March 1, 1902. In consideration of such payments the defendants were to convey the premises, and in case of a failure to pay the remainder of the purchase money, the $1,000 "so paid and deposited with this contract" should be forfeited. The wife seems to have entered into the contract with some reluctance and finally refused, altogether, to carry it out. The title to the farm was in her. The contract, by its terms, provided for payment of the $1,000 "on the signing

of this contract, and the same is paid for the purpose of binding said bargain." Defendants' answer alleged that the following clause indorsed on the back of the contract, "cash payment herein described to be paid by September 14, 1901," was placed upon the contract by agreement between Johnson and James G. Weber and without the assent of Electa Weber; that the latter was the sole owner of the premises, and that her husband had no authority to introduce any change into the contract; that the premises were occupied as a home, and that the wife never acknowledged the instrument after its terms were changed by the indorsement. Defendant, James G. Weber, says that the contract was annulled by mutual agreement between him and the plaintiff prior to September 21, 1901. Electa Weber's answer sets up the alteration of the contract by indorsement of an extension of time for payment of the $1,000, and that the $1,000 was not paid within the time stated in the contract, and she therefore elected to declare the contract at an end, and that such election was assented to by plaintiff. She also says that she was induced to sign the contract by threats on the part of her husband to desert her if she did not, and that she never acknowledged the instrument.

The reasons given, therefore, why specific performance of this contract should not be decreed, resolve themselves into three: (1) The indorsement upon the contract, without the assent of the wife, who is the owner of the property, of the extension until September 14 of the time for paying the $1,000; (2) the alleged annulment of the contract prior to September 21 by oral agreement between the plaintiff and John G. Weber; (3) the fact alleged in defendant's answer, and testified to in her evidence, that she was induced to sign the agreement by her husband's threats to desert her if she did not.

It seems unnecessary to discuss, at any great length, the proposition that the indorsement of an extension of time for the payment of the $1,000 is not sufficiently material to avoid the contract. This money, it is true, was origin-

ally agreed to be paid on the day of the contract's signing, which was September 7, 1901; but it appears clearly that it was understood between the parties that Johnson did not have the money with him; that he would have to get it from Fremont, and the money was to be paid, as the contract recited, for the purpose of binding the bargain, and was to be deposited with the contract in the bank at Creighton. It was actually deposited in the bank at Creighton three days later, and on the day following the contract was deposited. The latter had been, up to that time, retained by the notary who drew it, and who is since counsel for the defendants in this case. The money was actually in the bank before the contract was there; and whether or not the indorsement of consent, that it should be there by September 14, was by authorization of Electa Weber, does not seem material or offer any ground for refusing its specific enforcement.

The claim of an oral agreement to release and surrender the contract, between James G. Weber and the plaintiff, is not made out by the proof; and it is not necessary to discuss whether or not it would be valid in law. It is clear from the correspondence that an effort was made by the Webers, or at least, Mrs. Weber, to escape from the conditions of this contract. On the next day after its execution, James G. Weber wrote to the plaintiff at Fremont, telling him not to sell his farm as Weber's wife was declaring she would not sign any deed; also telling Johnson not to send the $1,000 "until you hear from me," that he was trying to get her to agree and nothing need be done until September 21; that he would write again the following week. Then on the 11th, three days later, he wrote Johnson again, saying that his wife was getting more contented all the time and he thought it would be all right; that he, himself, was going to Omaha the following Monday, and asked Johnson to meet him at Fremont at the 8:45 train. Again, on September 19, Weber writes: "I will do as I agreed along the line in this land deal, that I would let you know this week whether my wife would sell or not.

After considering the matter she says she would not sell, so you need not wait any longer for this place. I instructed the banker to return the money to you, which he will do tonight." In our opinion, the evidence of Mr. Weber, and the witness Vinker, if taken as wholly true, fails to establish any oral surrender or relinquishment of this contract, or an intention to surrender or relinquish on the part of the plaintiff:

It remains only to consider what effect is to be given of the allegations that the contract was executed under the threat of Weber to desert his wife if she did not sign it. There is no claim that there was any knowledge on the part of the plaintiff of any such duress by the husband. It does not seem necessary to examine as to whether or not the facts alleged amount to duress, inasmuch as no knowledge of, or responsibility for them, on the part of the plaintiff, is claimed. It seems clear that the wife can not defend against Johnson's claim, on the ground of any threats or imposition upon her by her husband of which Johnson was wholly innocent. *Ladew v. Paine,* 82 Ill. 221; *Biggers v. St. Louis Mutual House-Building Co.,* 9 Mo. App. 210; *Schrader v. Decker,* 9 Pa. St. 14, 49 Am. Dec. 538.

An earnest argument is made for the proposition that, the property in question being a family homestead, greater effect should be given to the husband's coercion of the wife than in other cases. Some Kansas decisions are cited in support of such a rule. They are founded upon the Kansas statute making the voluntary assent of both husband and wife necessary to such a conveyance or agreement. Probably the fact of the premises being a homestead should be taken into consideration in weighing the evidence and determining the soundness of this contract. There seems, however, no reason for adopting a different rule in such cases. The statute has simply required that all instruments affecting a homestead in this state be acknowledged. The effect of such acknowledgment is not supposed to be different from that in other instruments. Participation in the wrong by the purchaser should be shown in order to avoid the instrument.

It is recommended that the decree of the district court be reversed and the cause remanded with instructions to enter a decree for specific performance of the contract.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is reversed and the cause remanded with instructions to enter a decree for specific performance of the contract.

REVERSED.